IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **KEITH SINGLETON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 5:22-cv-070 |
| ) | |
| v. ) | By:   Michael F. Urbanski |
| ) | Chief United States District Judge |
| **INTERNATIONAL BUSINESS** ) | |
| **SALES AND SERVICES CORP.,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the court on a Motion for Judgment on the Pleadings, ECF No. 17, filed by defendant International Business Sales & Services Corp. ("IBSS"). Plaintiff Keith Singleton ("Singleton") originally filed this action in the Frederick County Circuit Court, bringing two causes of action arising from the termination of his employment with IBSS: a whistleblower retaliation claim under Virginia Code § 40.1-27.3(A) (the "whistleblower statute") and a common law claim under Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985), alleging wrongful termination in violation of a stated public policy. Compl., ECF No. 1-1.

After removing the case to federal court on diversity grounds, Not. Removal, ECF No. 1, IBSS moved to dismiss the Bowman claim as precluded by the existence of the statutory remedy provided by the whistleblower statute, Def's Mem. Supp. Mot. Dismiss, ECF No. 6. In response, Singleton requested that the court dismiss his Bowman claim, Pl.'s Resp., ECF No. 10, which the court did without prejudice, Order, ECF No. 15. IBSS then filed an answer. ECF No. 16.

Now, IBSS seeks dismissal of the remaining claim under the whistleblower statute, arguing that Singleton fails to state a claim upon which relief can be granted, as "his only cause of action alleges a breach of a Virginia statute, but Maryland law governs the dispute." Def.'s Mem. Supp. J. Pleadings, ECF No. 18, at 1. As the court agrees, IBSS's Motion for Judgment on the Pleadings, ECF No. 17, is **GRANTED**.

## I. Factual Background

Singleton, a Virginia resident, worked as a cybersecurity coach for IBSS, a Maryland corporation, from December 16, 2021, through his termination on February 8, 2022. Compl., ECF No. 1-1, at ¶¶ 1–2, 5–6. Nijel Redrick ("Redrick"), IBSS's Director of Governance, Risk Management, and Compliance, supervised Singleton throughout his employment with IBSS. Id. at ¶ 6. With IBSS's authorization, Singleton worked remotely from his home in Stephenson, Virginia, and never visited the corporate office in Silver Spring, Maryland. Id. at ¶ 7.

Singleton was responsible for coaching over a dozen cybersecurity apprentices, who IBSS classified as 1099 independent contractors. Id. at ¶ 8. Ten of these apprentices were enrolled in the Maryland Apprenticeship and Training Program ("MATP"); Singleton believes that IBSS intended to later convert these contractors into W2 employees. Id. at ¶ 9.

On January 18, 2022, Singleton emailed IBSS's Human Resource Manager, Francesca Urrutia ("Urrutia"), and Redrick to complain that the apprentices were improperly classified as independent contractors. Id. at ¶ 10. Specifically, Singleton wrote:

> I know that our Cyber Apprentices are classified as 1099's but is this not in direct contradiction of IRS guidance found here? - https://www.irs.gov/taxtopics/tc762. Given that I directly manage their day-to-day tasks such as what is completed, to what

> degree, and in what manner the work will be done. Combined with the fact that we are issuing them company laptops and provide them with company purchased software licenses for training - to me it seems like they would be most appropriately classified as a W2 employee given all of those factors rather than 1099. Not trying to put a target on my back here but at the same time I can't help but think there is a huge risk in the future for this to become an issue. Please let me know what you think.

Id. at ¶ 10.

Redrick responded telephonically on January 25, 2022, telling Singleton that they "normally wouldn't put things like that in writing" and would instead prefer to discuss such concerns over the phone. Id. at ¶ 11. Redrick asked if the email had been intended to "bind HR to take action?" Id.

Singleton called Urrutia on January 26, 2022, to reiterate his concerns about the classification of the apprentices, emphasizing the "questionable legality" of the practice. Id. at ¶ 12. Urrutia explained that providing full benefits for cyber apprentices would have been cost prohibitive and that the 1099 classification was meant to be temporary as IBSS determined the logistics of the apprenticeship program. Id. at ¶ 13. Urrutia further explained that IBSS had reached out to legal counsel to discuss the classification issue and that IBSS President Bruce Arvand had approved W2 employment status for one of the apprentices. Id. at ¶ 15. Singleton repeated his concern of the risks IBSS could face for misclassifying workers. Id. at ¶ 16.

On February 7, 2022, Redrick insisted that the apprentices Singleton supervised needed to work uncompensated hours to achieve training milestones, in addition to their regular full-time schedule. Id. at ¶¶ 17–18. Singleton responded by again raising his legal and ethical concerns regarding the classification of the apprentices to Redrick. Id. at ¶¶ 17–18. Specifically,

3

Singleton stated that he did not "believe what [Redrick] was asking [him] to do was legal and [he had] serious concerns," that this course of action "would put [Redrick], the cyber apprenticeship program, and IBSS at risk," and that IBSS was in violation of the terms of the apprentice sponsorship agreement with the Maryland Department of Labor. Id. at ¶¶ 18–20.

The following day, February 8, 2022, Urrutia and Redrick held a virtual meeting with Singleton and terminated his employment, effective immediately. Id. at ¶ 21. During this meeting, Urrutia was located in IBSS's corporate office in Silver Spring Maryland, Answer, ECF No. 16, ¶ 7, and Redrick was at his home in Upper Marlboro, Maryland, id. at ¶ 21. Urrutia claimed to have received a complaint from one of the cybersecurity apprentices—Debritu Moges ("Moges")—alleging that Singleton had spoken to her in a demeaning, unprofessional, and disrespectful manner. Compl., ECF No. 1-1, at ¶ 22. Urrutia rejected Singleton's request to share his account of the interaction. Id. at ¶ 24. Singleton objected to his termination as "smoke and mirrors," claiming that the timing indicated that IBSS was retaliating against him for raising concerns about the classification of the cybersecurity apprentices. Id. at ¶ 25. Finally, Singleton told Urrutia and Redrick that "expecting uncompensated work, violating tax laws, fraudulently representing cost accounting standards as a government contractor, violating the terms of the Maryland Apprenticeship and Training, and terminating his employment over a trumped-up reason were wrong, unethical, and illegal." Id. at ¶ 26.

## II. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." "A motion for judgment on

4

the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)).

> Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."

Drager v. PLIVA USA. Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). See Booker v. Peterson Cos., 412 Fed. App'x. 615, 616 (4th Cir. 2011) ("In order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

But, motions to dismiss and motions for judgment on the pleadings are not identical: "'[u]nlike on a Rule 12(b)(6) motion . . . on a Rule 12(c) motion the [C]ourt may consider the Answer as well.'" Mendenhall, 856 F. Supp. 2d at 724 (brackets and ellipsis in original) (quoting Alexander v. City of Greensboro, No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. Aug. 3, 2011)). "The 'factual allegations in the [A]nswer are taken as true to the extent they have not been denied or do not conflict with the [C]omplaint.'" Id. (brackets in original) (quoting Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)). Moreover, "[i]n 'determining a motion for judgment on the pleadings, the [C]ourt may consider documents incorporated by reference into the pleadings.'" Id. (second brackets in

5

original) (quoting Farmer, 393 F. Supp. 2d at 386). However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." A.S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) (quoting Fed. R. Civ. P. 12(c)). The decision to exclude matters outside the pleadings is "discretionary with the court." Id.

### III. Analysis

Singleton originally brought both a claim under the Virginia whistleblower statute and a Bowman claim alleging wrongful termination. Compl., ECF No. 1-1. After IBSS moved to dismiss the Bowman claim as barred due to the existence of a statutory remedy, Def's Mem. Supp. Mot. Dismiss, ECF No. 6, Singleton voluntarily dismissed it. Pl.'s Resp., ECF No. 10, see also Order, ECF No. 15. IBSS seeks judgment on the pleadings, arguing that Maryland law governs the dispute and that, as Singleton's sole remaining claim was brought under a Virginia statute, the case as a whole should be dismissed. Def.'s Mem. Supp. J. Pleadings, ECF No. 18, at 1. The court agrees.

Before the court can consider the merits of a case, it must determine the threshold issue of which state's law applies. When a case is before the court on diversity jurisdiction, the court must apply the choice-of-law rules of the jurisdiction in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). As this court sits in Virginia, Virginia's choice of law rules apply.

"The first step in applying Virginia's choice of law rules is to determine how Virginia would characterize" the claim "for choice of law purposes." Terry v. June, 420 F. Supp. 2d

6

493, 502 (W.D. Va. 2006). At its heart, a claim under Virginia's whistleblower statute sounds in tort, as it provides a private right of action for retaliatory harm inflicted by an employer.

For tort actions, Virginia law is clear:

> "Virginia applies the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of action." Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 327 (Va. 2006). See also McMillan v. McMillan, 253 S.E.2d 662, 663 (Va. 1979) ("In resolving conflicts of laws, the settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong."). Virginia courts typically define the "place of the wrong" as the "state in which the wrongful act took place, wherever the effects of that act are felt." Gen. Assur. of Am., Inc. v. Overby-Seawell Co., 893 F.Supp.2d 761, 777–78 (E.D. Va. 2012) (quoting Milton v. IIT Research Inst., 138 F.3d 519, 522 (4th Cir. 1998)).

Gilmore v. Jones, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019).

The lex loci delecti rule applies to common law retaliatory discharge claims. See Bowman v. State Bank of Keysville, 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985) (recognizing that retaliatory discharges sound in tort). The place of the wrong, in such cases, is the place where "the termination was effected." Mullins v. Int'l Union of Operating Engineers Loc. No. 77 AFL--CIO of Washington, D.C., 214 F. Supp. 2d 655, 666 (E.D. Va. 2002), aff'd sub nom. Mullins v. Int'l Union of Operating Engineers, Loc. No. 77, 60 F. App'x 510 (4th Cir. 2003).

When the parties are in different states, the location of the harm is the location of the employer; the location of the employee is irrelevant. In Mullins, an employee of a Maryland company who lived in Virginia and conducted most of her employment duties in Virginia was informed of her termination via telephone. Id. Although Mullins sought to bring a Bowman

7

claim under Virginia law, the court held that this termination occurred in Maryland and therefore applied Maryland law:

> The fortuitous circumstance that Mullins was in Virginia when she placed the telephone call [to her employer] is insufficient to establish the application of Virginia law. The termination was effected by [the employer] in Maryland and it is immaterial that Mullins happened to be in Virginia when she called [the employer] to receive notice of termination. Surely if Mullins had initiated the telephone call from the District of Columbia or even Cancun, Mexico, she could not plausibly assert that District of Columbia or Mexican law controls.

Id. at 666–67. Because Maryland law provided no "legally cognizable claim for wrongful discharge" that fit the facts of Mullins's termination, the court granted summary judgment on the wrongful discharge claim.

Likewise, in Meadows v. Northrop Grumman Innovation Sys., Inc., the defendant-employer sent a termination letter originating from a federal enclave to the plaintiff's home in Virginia. 436 F. Supp. 3d 879, 888 (W.D. Va. 2020). Because the "termination is effectuated when the employer makes the decision and originates the communication to the employee," and "Meadows' termination was contemplated and carried out from the Radford Arsenal," a federal enclave, federal jurisdiction was proper. Id. Concluding that there was no applicable federal law and that the state law applicable in the enclave did not encompass Bowman claims, the court dismissed the wrongful termination claim under Rule 12(b)(6). Id. at 890.

Applying these principles here, Singleton's termination was effectuated from Maryland, where Urrutia, Redrick, and IBSS's corporate headquarters were located. Singleton's presence in Virginia "is irrelevant to where the termination was 'effected.'" Id. at 888. Therefore, Maryland law applies.

Virginia's Whistleblower Statute lacks a choice of law provision that could alter this conclusion. C.f. Logue v. Patient First Corp., No. CV 17-2097, 2020 WL 2526620, at *2 (D. Md. May 15, 2020) (noting that "the Maryland Legislature included in the Maryland Wrongful Death Statute a choice of law clause which displaces the lex loci delicti rule"). Nor has either party pointed to a source of law suggesting that a different choice of law analysis should apply in this context.

In Rashid v. Barr Lab'ys, Inc., No. 608-CV-1468-ORL31GJK, 2008 WL 5341135, at *1 (M.D. Fla. Dec. 19, 2008), the plaintiff—filing in Florida—brought a claim of retaliatory discharge under Florida's whistleblower statute. The defendant moved to dismiss this claim, contending that Florida's choice of law rules mandated the application of New Jersey law. Id. at *2. The court agreed, ultimately holding that the "application of New Jersey law is fatal" to the count based in Florida's whistleblower statute. Id. The same result is required here. The application of Maryland law is fatal to Singleton's whistleblower claim under Virginia law.

The only remaining claim in Singleton's complaint seeks relief under the Virginia whistleblower statute. Since Virginia law is inapplicable to this dispute, Singleton's complaint, as it currently stands, has failed to state a claim upon which relief can be granted and IBSS is entitled to judgment on the pleadings. In any event, as it is unclear from the facts alleged whether Singleton's termination may give rise to a claim under Maryland law, the court will grant Singleton leave to amend his complaint within thirty (30) days of the entry of the accompanying order.[1]

---

[1] Rather than dismiss this case, Singleton urges the court to transfer this case to the District Court of Maryland. Mem. Opp'n J. Pleadings, ECF No. 19, at 6. Singleton cites to Hotung v. Hotung, for the proposition that "dismissal, in the context of a forum non conveniens motion, is a far harsher remedy than transfer of venue

## IV. Conclusion

For the aforementioned reasons, IBSS's Motion for Judgment on the Pleadings, ECF No. 17, is **GRANTED**. Singleton is **GRANTED** leave to file an amended complaint within thirty (30) days. If no amended complaint is filed, the Clerk is **DIRECTED** to dismiss this case and strike it from the active docket of this court.

It is **SO ORDERED**.

Entered: December 4, 2023

Michael F. Urbanski
Chief U.S. District Judge
2023.12.04 13:42:13
-05'00'

Michael F. Urbanski
Chief United States District Judge

---

because '[d]ismissal involves a risk that a plaintiff may not be able to assert his right of action in another court.'" No. 130264, 2014 WL 576178, at *4 (Va. Feb. 7, 2014) (McClanahan, J., dissenting) (quoting Caldwell v. Seaboard S.R., Inc., 238 Va. 148, 153, 380 S.E.2d 910, 912 (1989)). Singleton's argument is misplaced, however, as he chose to bring this suit in federal court in Virginia and no motion to transfer on forum non conveniens grounds has been filed.