IN THE UNITED STATES DISTRCIT COURT
FOR THE WESTERN DISTRCICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| **KEITH SINGLETON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-00070-MFU |
| | ) | |
| **INTERNATIONAL BUSINESS SALES & SERVICES CORPORATION** | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

The Plaintiff, **KEITH SINGLETON** ("Mr. Singleton"), by counsel, moves for judgement against Defendant, **INTERNATIONAL BUSINESS SALES AND SERVICES CORPORATION** ("Defendant" or "IBSS"), on the grounds and the amount as hereafter set forth:

**NATURE OF ACTION**

This is an action for wrongful termination or discharge brought under Maryland Common Law, otherwise known as abusive discharge. *See*, *Leese v. Baltimore County*, 64 Md. App. 422, 467-468 (1985). On February 8, 2022, Defendant terminated Mr. Singleton from his position as a Cybersecurity Coach with IBSS in Stephenson, Virginia after reporting to his supervisor that IBSS unlawfully misclassified workers as independent contractors and directed uncompensated overtime work. Defendant terminated Mr. Singleton because he was unwilling to violate labor and tax law within the scope of his employment.

Further, Defendant created pretext for Plaintiff's termination when, the day after Plaintiff's second written complaint to Human Resources, IBSS falsely stated he acted in a demeaning manner towards a co-worker. Defendant used this pretext to disguise the true reason for

Case 5:22-cv-00070-MFU-JCH   Document 26   Filed 01/02/24   Page 2 of 11
Pageid#: 159

Keith Singleton v. International Business Sales and Services, Corp.
Amended Complaint
Page **2** of **11**

terminating Mr. Singleton, which was his unwillingness to perpetuate illegal workplace practices of the employer whose principal place of business is in Maryland. Because of Defendant's wrongful termination, Mr. Singleton has experienced considerable stress and anxiety, causing, emotional, physical, and economic damages.

## PARTIES

1. Mr. Singleton, is an individual and resident of the Commonwealth of Virginia, and former "employee" of Defendant within the meaning of Md. Code, Lab. & Empl. § 11-301.

2. Defendant, IBSS, is a Maryland corporate entity that operates within Frederick County and elsewhere in the Commonwealth. IBSS is an "employer" within the meaning of Md. Code, Lab. & Empl. § 11-301.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 USC § 1332.

4. Venue is appropriate pursuant to 28 USC § 1391.

## STATEMENT OF FACTS

5. Mr. Singleton began his employment with IBSS on December 16, 2021, as a Cybersecurity Coach, with an annual salary of $125,000. His benefits included health insurance, disability insurance, ten (10) days paid vacation, seven (7) days of sick leave, paid holidays, and a 401k program with employer match.

6. Mr. Nijel Redrick ("Mr. Redrick"), IBSS Director of Governance, Risk Management and Compliance, supervised the Plaintiff until he was terminated on February 8, 2022.

Case 5:22-cv-00070-MFU-JCH   Document 26   Filed 01/02/24   Page 3 of 11
Pageid#: 160

Keith Singleton v. International Business Sales and Services, Corp.
Amended Complaint
Page **3** of **11**

7. Defendant authorized Mr. Singleton to telecommute from his home in Stephenson, Virginia. During his employment, Mr. Singleton never visited Defendant's sole office in Silver Spring, Maryland.

8. In his short tenure with IBSS, Mr. Singleton coached approximately fifteen IBSS cybersecurity apprentices the company hired as 1099 independent contractors. Ten of these cybersecurity apprentices were enrolled in the Maryland Apprenticeship and Training Program ("MATP") during Mr. Singleton's tenure.

9. It is Mr. Singleton's understanding that, IBSS sponsored the Maryland state subsidized MATP as a cost-effective training and certification staffing alternative to hiring employees. Defendant intended to place MATP graduates on the company's government contracts after converting them from 1099 independent contractors to W2 employees.

10. On January 18, 2022, Mr. Singleton e-mailed Francesca Urrutia ("Ms. Urrutia"), IBSS Human Resource Manager, and Mr. Redrick, to complain that Defendant improperly classified the cybersecurity apprentices as 1099 independent contractors. Mr. Singleton's e-mail explained,

> "I know that our Cyber Apprentices are classified as 1099's but is this not in direct contradiction of IRS guidance found here? - https://www.irs.gov/taxtopics/tc762. Given that I directly manage their day-to-day tasks such as what is completed, to what degree, and in what manner the work will be done. Combined with the fact that we are issuing them company laptops and provide them with company purchased software licenses for training - to me it seems like they would be most appropriately classified as a W2 employee given all of those factors rather than 1099.

Not trying to put a target on my back here but at the same time I can't help but think there is a huge risk in the future for this to become an issue. Please let me know what you think."

11. On a January 25, 2022, phone call, Mr. Redrick admonished Mr. Singleton by saying "we normally wouldn't put things like that in writing" referring to Plaintiff's concerns about misclassifying the cybersecurity apprentices. Mr. Redrick also stated, 'things like that' should be spoken about in a call. He asked Mr. Singleton if the writing was "expected to bind HR to take some action?"

12. On January 26, 2022, Mr. Singleton called Ms. Urrutia to discuss the status of the cybersecurity apprentices as 1099 independent contractors. Mr. Singleton reiterated his concerns that Defendant was misclassifying the cybersecurity apprentices and his worries about the practice's "questionable legality."

13. Ms. Urrutia explained that the program was "very, very costly to pay for" and that full benefits for cyber apprentices would be cost prohibitive. She further explained the classification was "meant to be [a] temporary measure until IBSS could figure out the logistics of the program."

14. Ms. Urrutia stated the apprenticeship program was "Bruce [Arvand's] pet project and that sometimes his wishes are grand but are difficult to execute." Mr. Arvand was Defendant's President during Mr. Singleton's employment.

15. Ms. Urrutia stated that IBSS had reached out to legal counsel to address the issue. She further explained that Bruce Arvand had personally approved employment status for one unnamed cybersecurity apprentice rather than a 1099 independent contractor.

Case 5:22-cv-00070-MFU-JCH   Document 26   Filed 01/02/24   Page 5 of 11
Pageid#: 162

Keith Singleton v. International Business Sales and Services, Corp.
Amended Complaint
Page **5** of **11**

16. Mr. Singleton responded that Defendant had a responsibility to pay the cyber apprentices properly. He further reiterated that Defendant required the cybersecurity apprentices to sign agreements to repay $15,000 to $20,000 if they left the program before attaining certification. Mr. Singleton explained that, given the repayment protection, Defendant faced much greater risks for wrongfully misclassifying the cybersecurity apprentices than the cost risks for early withdrawal by apprentices.

17. In a meeting with Mr. Redrick on February 7, 2022, Mr. Singleton again raised both legal and ethical concerns over the cybersecurity apprentices. Mr. Singleton repeated his belief that IBSS was misclassifying the cybersecurity apprentices as independent contractors.

18. In this meeting, Mr. Redrick insisted the cybersecurity apprentices work uncompensated time in addition to their regular 40-hour work schedule. Mr. Singleton firmly told his supervisor, "I don't believe what you are asking me [to do] is legal and I have serious concerns." Mr. Singleton also stated, "It would put you, the cyber apprenticeship program, and IBSS at risk."

19. Mr. Singleton communicated to Mr. Redrick that his demand for cybersecurity apprentices to work uncompensated time to achieve training milestones was unethical and likely illegal.

20. Mr. Singleton told Mr. Redrick IBSS was in violation of the terms of the sponsorship agreement with the Maryland Department of Labor.

21. The following day, February 8, 2022, Mr. Urrutia and Mr. Redrick held a virtual meeting with Mr. Singleton to announce that IBSS was terminating his employment effective immediately.

Case 5:22-cv-00070-MFU-JCH  Document 26  Filed 01/02/24  Page 6 of 11
Pageid#: 163

Keith Singleton v. International Business Sales and Services, Corp.
Amended Complaint
Page **6** of **11**

22. Mr. Urrutia explained she had received a complaint from Ms. Debritu Moges ("Ms. Moges"), a cybersecurity apprentice, alleging Mr. Singleton spoke to her in a demeaning, unprofessional, and disrespectful manner.

23. Ms. Urrutia did not interview any of the other purported witnesses to the exchange with Ms. Moges.

24. Ms. Urrutia refused to hear Mr. Singleton's account of the interaction. After requesting to share his side of the story, Ms. Urrutia asked Mr. Redrick, "Nijel, I believe you spoke to your boss [referring to Bruce Arvand, IBSS President] about this, correct?" Mr. Rederick responded that he had spoken to Mr. Arvand.

25. Mr. Singleton told Ms. Urrutia that the termination was "smoke and mirrors." He explained that the timing indicated that Defendant was terminating him for bringing up legal and ethical concerns over misclassifying the cybersecurity apprentices as independent contractors.

26. Mr. Singleton further stated that expecting uncompensated work, violating tax laws, fraudulently representing cost accounting standards as a government contractor, violating Maryland law and terminating his employment over a trumped-up reason were wrong, unethical, and illegal.

## COUNT I: WRONGFUL DISCHARGE

27. Mr. Singleton incorporates all prior allegations.

28. Mr. Singleton faced retaliation by Defendant for reporting and refusing to engage in illegal actions on behalf of Defendant.

29. Maryland recognizes the Common Law tort of wrongful discharge, occasionally referred to as abusive discharge. This tort can be brought by an at will employee to challenge the basis of their termination.

*Keith Singleton v. International Business Sales and Services, Corp.*
Amended Complaint
Page **7** of **11**

30. A tort action for "abusive discharge must allege that 1. the employee was discharged; 2. the dismissal violated some clear mandate of public policy; and 3. there is a nexus between the defendants and the decision to fire the employee." *Leese v. Baltimore County*, 64 Md. Spec. App. 422, 468 (1985).

31. An employee's dismissal violates public policy if the Defendant terminates the employee for refusing to engage in an illegal activity or if the Defendant discharges the employee for intending to fulfill a statutory prescribed duty. *See*, *Adler v. American Standard Corp.*, 830 F.2d 1303, 1307 (4th Cir. 1987).

32. Mr. Singleton's termination was because he refused to engage in Defendants illegal labor and tax practices.

33. On or about February 7, 2022 Mr. Singleton approached his supervisor; Mr. Redrick to inform him that Defendant was unlawfully requiring uncompensated work and was misclassifying the apprentices as independent contractors.

34. For the three weeks prior to this conversation, Mr. Singleton maintained that Defendant was violating labor laws, tax regulations, and the MATP governing regulations.

35. Mr. Singleton e-mailed his supervisor, Mr. Redrick, to identify direct contradictions between Defendant classifying the cybersecurity apprentices as independent contractors and the IRS factors for assessing the status of workers' as independent contractors. Mr. Singleton went as far as to provide Mr. Redrick the IRS website entitled "Topic No. 762 Independent Contactor v. Employee." See https://www.irs.gov/taxtopics/tc762.

36. In his e-mail, Mr. Singleton wrote to Mr. Redrick and Ms. Urrutia, describing how Defendant had misclassified the cybersecurity apprentices. Mr. Singleton explained that the cybersecurity apprentices should be employees because he managed their day-to-day tasks, what

they completed, to what degree, and in what manner the work was done. In addition, Mr. Singleton explained that Defendant issued the apprentices laptops, provided company purchased software licenses, and instituted a required training curriculum. Mr. Singleton explained that all these factors were consistent with classifying the cybersecurity apprentices as employees under IRS regulations.

37. Mr. Redrick then verbally reprimanded Mr. Singleton against reporting such concerns in writing, acknowledging Mr. Singleton's allegation of unlawful conduct. Rather than engaging in a meaningful inquiry, Mr. Redrick attempted to suppress the violations.

38. On February 8, 2022, Ms. Urrutia and Mr. Redrick terminated Mr. Singleton in a virtual meeting because he refused to participate in Defendant's illegal activities.

39. Although Mr. Singleton had an outstanding performance records, he did not receive an opportunity to transfer within IBSS, despite other positions being available at the time of, and immediately following, his receipt of the Separation Agreement.

40. Mr. Singleton was terminated a mere day after his most recent report of Defendant's illegal activities and his own refusal to engage in these illegal employment practices.

41. The March 2019 IBSS Employee Handbook identified discipline and termination as possible results for "[f]ailure to report any illegal or unethical activities in the workplace of other employees, customers, vendors, or outside parties."

42. When Mr. Singleton first uncovered his involvement in violations of both tax and labor laws, he quickly notified Defendant and proposed strategies for remedying the problem.

43. Defendant responded by admonishing Mr. Singleton, instead of addressing the violations.

44. Refusing to participate in these illegal practices, Mr. Singleton continued to report Defendant's illegal conduct.

45. Because of Mr. Singleton's determination and refusal to adhere to illegal workplace practices, Defendant terminated his employment on February 8, 2022.

46. The causal link between Mr. Singleton's refusal to engage in illegal workplace conduct, and Defendant's termination of his employment initially appeared on January 25, 2022, when Mr. Redrick reprimanded Mr. Singleton for putting his concerns about illegal workplace conduct in writing.

47. This would be Mr. Singleton's first and only warning because on February 8, 2022, a day after Mr. Singleton e-mailed his second report of illegal conduct, Defendant terminated his employment.

48. The proximity between Mr. Singleton's second report and his termination demonstrates that his termination was due to his refusal to assist Defendant in violating tax and labor laws, as well as the attempts he made to report these issues to Defendant.

49. Mr. Singleton suffered emotional distress and loss of income because Defendant terminated him because he refused to engage in illegal activities at the work place.

50. As a direct and proximate cause of Defendant's violation of Maryland law, as described above, Mr. Singleton has been compelled to retain the services of counsel to protect his rights with respect to Defendants wrongful discharge. Mr. Singleton has thereby incurred and will continue to incur legal fees and costs. The full nature and extent of which are presently unknown to Mr. Singleton.

51. Mr. Singleton is entitled to recover compensatory damages of $250,000.00, punitive damages not to exceed $350,000.00.

**WHEREFORE,** the Plaintiff KEITH SINGLETON, respectfully requests that this Court:

A. Enter judgement in favor of Mr. Singleton and against Defendant for their wrongful or abusive discharge of Mr. Singleton;

B. Compensatory damages in the amount of $250,000.00 including lost wages, back pay, past and future impairment of power to earn money, and emotional distress;

C. Punitive damages of $350,000.00 against Defendant for their intentional and malicious conduct;

D. Pre-judgment and post-judgment interests; and

E. Award him such other and further relief, as the Court deems just and equitable.

**TRIAL BY JURY IS REQUESTED.**

                Respectfully submitted,

                **KEITH SINGLETON**
                By Counsel:

SUROVELL ISAACS & LEVY PLC

By:   **/s/ Jason F. Zellman**
    Jason F. Zellman, Esquire, VSB #77499
    4010 University Drive, Second Floor
    Fairfax, Virginia 22030
    Telephone: 703.277.9704
    Facsimile: 703.591.9285
    Email: JZellman@SurovellFirm.com
    *Counsel for Mr. Singleton*

## Certificate of Service

I certify that, on January 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nigel L. Wilkinson (VSB# 46500)
Jason A. Ross (VSB# 91034)
Jackson Lewis PC
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
Telephone: 703.483.8300
Facsimile: 703.483.8301
Email: Nigel.Wilkinson@JacksonLewis.com
Email: Jason.Ross@JacksonLewis.com
*Counsel for Defendant*


   **/s/ Jason F. Zellman**
Jason F. Zellman