IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KEITH SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:22-cv-070 |
| | ) | |
| v. | ) | By:    Michael F. Urbanski |
| | ) | Chief United States District Judge |
| INTERNATIONAL BUSINESS | ) | |
| SALES & SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a Motion to Dismiss the Amended Complaint, ECF No. 27, filed by Defendant International Business Sales and Services Corporation ("IBSS"). Plaintiff Keith Singleton claims in his Amended Complaint, ECF No. 26, that IBSS wrongfully discharged him in violation of Maryland common law.[1] See Adler v. Am. Standard Corp., 291 Md. 31, 432 A.2d 464 (1981). IBSS seeks dismissal of the single-count Amended Complaint on the grounds that Singleton (1) has not identified a clear mandate of public policy that IBSS violated when it discharged Singleton and (2) does not allege he was fired for refusing to violate the law. The court agrees that Singleton neither identified a clearly defined public policy nor alleged that he was terminated for refusing to violate the law. Accordingly, IBSS's motion is **GRANTED**.

---

[1] This court previously granted a Motion for Judgment on the Pleadings, ECF No. 17, filed by IBSS. Order, ECF No. 25. The court determined that Maryland law, not Virginia law, as Singleton had pled in his Initial Complaint, governed the dispute, and gave Singleton leave to file an amended complaint. Mem. Op., ECF No. 24, at 2, 10. Singleton filed this Amended Complaint, in which he brings only the wrongful discharge claim under Maryland common law. See Am. Compl., ECF No. 26, at ¶¶ 29–31.

I.

Singleton, a Virginia resident, worked as a cybersecurity coach for IBSS, a Maryland corporation, from December 16, 2021, until the company discharged him on February 8, 2022. Am. Compl., ECF No. 26, at ¶¶ 5, 21. During the less than two months that Singleton worked for IBSS, he never visited the company's office in Maryland, instead working remotely from his home in Stephenson, Virginia. Id. at ¶ 7. Nijel Redrick, IBSS's Director of Governance, Risk Management, and Compliance, supervised Singleton throughout his employment. Id. at ¶ 6. Singleton provided cybersecurity coaching for approximately 15 of the company's independent contractors, some of whom he believed IBSS intended to convert from contractors to employees. Id. at ¶¶ 8–9.

Singleton took issue with IBSS's classification of these cybersecurity apprentices as independent contractors. Id. at ¶¶ 10, 12. On January 18, 2022, Singleton sent an email to Francesa Urrutia, IBSS's Human Resource Manager, in which he shared his concern that the apprentices' status as contractors could pose a problem for the company in the future. Id. at ¶ 10. He cited guidance from the Internal Revenue Service ("IRS"), suggesting that IBSS needed to convert the contractors to employees to avoid running afoul of tax law. Id. On January 25, 2022, Redrick called Singleton and informed him that "we normally wouldn't put things like that in writing," and asked if Singleton "expected to bind HR to take some action" with the email. Id. at ¶ 11.

Singleton called Urrutia on January 26, 2022, to follow up on his January 18, 2022, email. Id. at ¶ 12. He reiterated his concern regarding the "questionable legality" of IBSS's classification of the apprentices as contractors. Id. Urrutia informed Singleton that converting

2

each of the apprentices to employees was cost-prohibitive at the time and that the classification was only a temporary measure until IBSS "could figure out the logistics of the program." Id. at ¶ 13. She further explained that Bruce Arvand, President of IBSS, had created the apprenticeship program and that "his wishes are grand but are difficult to execute." Id. at ¶ 14. Urrutia told Singleton that the company had contacted legal counsel about the classification issue, and that Arvand had already approved the conversion of one apprentice from contractor to employee. Id. at ¶ 15.

In a February 7, 2022, meeting, Redrick told Singleton that the cyber apprentices needed to work uncompensated time in addition to their regular 40-hour work schedule to achieve their training milestones.[2] Id. at ¶¶ 17–19. Singleton told Redrick that this requirement was illegal and stated that "[i]t would put you, the cyber apprenticeship program, and IBSS at risk." Id. at ¶ 18.

Urrutia and Redrick informed Singleton that IBSS was terminating his employment in a virtual meeting on February 8, 2022. Id. at ¶ 21. Urrutia told Singleton that she had received a complaint from one of his cybersecurity apprentices, who told Urrutia that Singleton had spoken to her in a "demeaning, unprofessional, and disrespectful manner." Id. at ¶ 22. Urrutia refused to respond to the apprentice's allegations, and Redrick indicated that Arvand had approved Singleton's discharge. Id. at ¶¶ 24. Singleton told Urrutia that he believed IBSS was terminating his employment because he had raised "legal and ethical concerns over

---

[2] Singleton alleges only that Redrick raised the prospect that the apprentices could work without pay, not that they did in fact work without pay.

3

misclassifying the cybersecurity apprentices as independent contractors," and objecting to Redrick's expectation that the apprentices work without pay Id. at ¶¶ 25–26.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726,

4

730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

### III.

Singleton brings this claim for wrongful discharge under Maryland common law, as established in Adler v. Am. Standard Corp., 291 Md. 31, 35, 432 A.2d 464, 467 (1981). Maryland follows the common law rule that "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." Id. However, the court in Adler carved out a narrow exception to this general rule when it held that "an at-will employee's termination may not contravene a 'clear mandate of public policy.'" Szaller v. Am. Nat. Red Cross, 293 F.3d 148, 151 (4th Cir. 2002) (quoting Adler, 291 Md. at 47, 432 A.2d at 473).

> In order for a mandate of public policy to be well-established enough to form the basis of a wrongful discharge action, there "must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation."

Id. (quoting Porterfield v. Mascari II, Inc., 142 Md. App. 134, 140, 788 A.2d 242, 245 (2002)).

A wrongfully discharged employee must prove that (1) the employee was discharged; (2) the basis for the discharge violated some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee.

5

Symeonidis v. Paxton Cap. Grp., Inc., 220 F. Supp. 2d 478, 483 (D. Md. 2002) (citing Shapiro v. Massengill, 105 Md. App. 743, 764, 661 A.2d 202, 213 (1995)). "Limitation of the claim for abusive discharge to situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty, ties abusive discharge claims down to a manageable and clear standard. Adler v. Am. Standard Corp., 830 F.2d 1303, 1307 (4th Cir. 1987).

Here, Singleton alleges that IBSS discharged him because he refused to engage in "illegal labor and tax practices." Am. Compl., ECF No. 26, at ¶ 32. Specifically, Singleton claims that IBSS terminated his employment because he informed Redrick and Urrutia that he believed the company "was unlawfully requiring uncompensated work and was misclassifying the apprentices as independent contractors." Id. at ¶ 33. Singleton's Amended Complaint fails to state a claim for two reasons: he has not identified any clear mandate of public policy on which IBSS based his discharge and he does not allege that IBSS personnel asked him to engage in illegal activity.

Singleton does not identify any "preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision" that IBSS violated when it discharged him. Szaller, 293 F.3d at 151 (quoting Porterfield, 142 Md. App. at 140, 788 A.2d at 245). Singleton argues that he identified a clear mandate of public policy when he alleged that he was fired for raising concerns about "illegal tax and labor practices," Am.

6

Compl., ECF No. 26, at ¶ 32, but this assertion is foreclosed by the Fourth Circuit's decision in <u>Adler</u>, 830 F.2d at 1307.[3]

In <u>Adler</u>, a former assistant general manager at American Standard claimed that the company had discharged him because he "had stated his intention to reveal to higher officers of the corporation the existence of an allegedly illegal 'kickback' scheme." 830 F.2d at 1303. The former employee raised concerns about discrepancies in the company's records with his superiors, who fired him shortly thereafter. <u>Id.</u> at 1304. The former employee's concerns had merit—one employee involved in the kickback scheme pled guilty to mail fraud and the company asked another employee to resign. <u>Id.</u> at 1304–05. The discharged employee sued the company, alleging that "he had been discharged to prevent his disclosure to management of the violation of seventeen federal and Maryland statutes." <u>Id.</u> at 1305. The Fourth Circuit held that "an employment termination motivated by a desire to conceal wrongdoing by preventing its disclosure to higher corporate officers does not violate Maryland's public policy." <u>Id.</u> at 1304. The court reasoned that the former employee's discharge stemmed only from "his intention to 'blow the whistle' on illegal activities condoned by his supervisors . . . and their efforts to protect themselves." <u>Id.</u> at 1307. The court concluded that such a basis for termination "is not a violation of clearly mandated Maryland public policy and it does not involve an effort by [the former employee] to fulfill a statutorily prescribed duty nor his failure to engage in illegal activity." <u>Id.</u>

---

[3] The Fourth Circuit's decision in <u>Adler</u> arose from the same dispute in which the then-Court of Appeals of Maryland, now called the Supreme Court of Maryland, initially recognized wrongful discharge as a cause of action under Maryland common law. <u>See Adler</u>, 830 F.3d at 1305 (citing <u>Adler</u>, 291 Md. at 47, 432 A.2d at 473).

Singleton's assertion that he raised concerns about illegal tax and labor practices does not establish that IBSS terminated him in violation of a clear mandate of public policy. Like the former employee in Adler, who was terminated after he shared "his intention to 'blow the whistle' on illegal activities condoned by his supervisors," id. at 1307, Singleton claims that IBSS discharged him because he raised concerns about the company's misclassification of the apprentices as contractors and failure to compensate them. This court is bound by the Fourth Circuit's conclusion that sounding the alarm in this manner does not constitute a clear mandate of public policy under Maryland law.

This conclusion is supported by the Court of Appeals of Maryland's decision in Wholey v. Sears Roebuck, in which the court held that "merely investigat[ing] suspected wrong-doing and discuss[ing] that investigation with co-employees or supervisors" is insufficient to bring a wrongful discharge action. 370 Md. 38, 62, 803 A.2d 482, 496 (2002). In Wholey, a Sears, Roebuck and Co. security guard was discharged after he reported to his supervisor that he suspected the store manager of stealing from the company. Id. at 44–45, 803 A.2d at 485. The former employee did not report the suspected theft to law enforcement, but rather encouraged his supervisor to investigate the manager. Id. The company terminated his employment shortly after he raised the issue. Id. at 45, 803 A.2d at 485. The court found that the former employee could not state a claim for wrongful discharge because he did not report the perceived wrongdoing to law enforcement officials. Id. at 65–66, 803 A.2d at 498. While the court acknowledged that an employee who reports suspected criminal activity to law enforcement may be entitled to recover for wrongful discharge, the court did not extend the cause of action to those employees who only report such concerns to their co-workers. Id. The court reasoned

8

that the Maryland "legislature has declined to encroach upon the employment decisions of private companies through creation of a general all-encompassing 'whistleblower protection' statute which would protect employees who investigate and internally report suspected criminal activity; we, in turn, decline to act in its stead." Id. at 67, 803 A.2d at 499.

Like the former employee in Wholey, Singleton did not report the perceived wrongdoing to law enforcement officials, instead only raising his concerns with Redrick and Urrutia. Singleton fails to state a claim because Maryland has refused to recognize a cause of action for wrongful discharge where an employee is discharged after he complains internally of suspected wrongdoing without elevating his concerns to law enforcement.

Singleton's assertion that he refused to engage in illegal activity is not borne out by the allegations in the Amended Complaint because no one asked him to engage in illegal activity in the first place. Singleton does not allege that Redrick or Urrutia, or anyone else at IBSS, asked Singleton to engage in illegal conduct or violate a well-established public policy. Instead, the Amended Complaint makes clear that Singleton raised concerns about IBSS business practices that he believed violated the law, namely that cybersecurity apprentices were misclassified as contractors and might have to work without pay. Am. Compl., ECF No. 26, at ¶ 33. The Amended Complaint does not allege that Redrick, Urrutia, or anyone else at IBSS asked Singleton to act with respect to the apprentices' pay structure or work classification. Further, it is not clear from Singleton's allegations that the business practices about which Singleton complained were illegal—Singleton's reference to "illegal tax and labor practices" is insufficient to plausibly claim that IBSS was engaged in illegal conduct. Id. at ¶ 32. Moreover, neither of these aspects of IBSS's business were within the purview of Singleton's job duties.

His work at IBSS involved coaching the apprentices in cybersecurity, not determining their pay structure or defining their relationship with the company. Put simply, Singleton alleges that he raised concerns about IBSS business practices outside the scope of his duties on his own, not at the prompting of any IBSS employee. Singleton has failed to state a claim upon which relief can be granted because he has not alleged that he was discharged in violation of a clear mandate of Maryland public policy and because no IBSS personnel asked Singleton to engage in illegal activity.

## IV.

For the reasons stated above, the motion to dismiss is **GRANTED**, and the Amended Complaint is **DISMISSED**. An appropriate order will be entered this day.

Entered: *Apr. 1 2, 2024*

Michael F. Urbanski
Chief United States District Judge